FILED

04/10/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0134

DA 16-0134

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 83

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHANCE RYAN CONLEY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC 2015-53
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman; Assistant Attorney General, Helena, Montana

            Wyatt A. Glade, Custer County Attorney, Miles City, Montana

Submitted on Briefs:  December 28, 2017

Decided:  April 10, 2018

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      This appeal arises from the Sixteenth Judicial District Court's denial of a motion to suppress evidence discovered in the course of a probationary search.  We affirm.

¶2      We restate the issue on appeal as follows:

*Did the District Court err in denying Conley's motion to suppress?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On May 19, 2015, Chance Ryan Conley (Conley) was given a deferred sentence for two counts of criminal possession of dangerous drugs, methamphetamine.  Conley was placed on probation and assigned to probation officer Tom Fulton (Fulton).  Conley's sentence contained numerous conditions and restrictions, including requiring daily reporting to his probation officer, abstention from illegal drug use, and consent to probationary searches.  Relevant to this appeal is Condition 8 of Conley's deferred sentence:

> Upon reasonable suspicion that the Defendant has violated the conditions of supervision, a probation and parole officer may search the person, vehicle, and residence of the Defendant, and the Defendant must submit to such search.  A probation and parole officer may authorize a law enforcement agency to conduct a search, provided the probation and parole officer determines reasonable suspicion exists that the Defendant has violated the conditions of supervision.

¶4      After his supervision was transferred to probation Officer Kristi Moore (Moore), Conley immediately began failing to report.  Conley reported in person on June 11 and June 15, 2015; he admitted to using methamphetamine and signed admissions to that fact.  Conley made no contact after June 15, 2015.  He had multiple probation violations,

2

including continued drug use, lack of employment, lack of compliance with the treatment court, and a current arrest warrant. Another probationer reported Conley was actively using methamphetamine.

¶5 The record shows that on July 6, 2015, Moore and Fulton went to Conley's last known address, hoping to locate him. When Moore and Fulton arrived they observed a white, four-door vehicle in the driveway with at least two occupants. The driver, later identified as Kevin Baker (Baker), attempted to pull out of the driveway when Moore blocked their exit. Conley quickly got out of the front passenger's side of the vehicle. Moore placed Conley in handcuffs and searched his person; no weapons or contraband were found. Conley and Baker were instructed to sit on the ground.

¶6 Moore and Fulton were not aware of the ownership status of the vehicle. They informed the men that the vehicle would be searched because of the "red flags" of on-going drug use Conley exhibited, including dirty and shabby clothing, disheveled physical appearance and the admission that they had been up all night, as well as the conditions of his probation. While Moore waited with the two men, Fulton looked into the passenger side of the vehicle. Fulton testified that from outside of the vehicle he could see a glasses pouch on the back-passenger's seat, and that glasses pouches are often used by drug users to store their drug kits. Upon examination of the glasses pouch, Fulton discovered needles and a baggy with a crystal-like substance. Conley admitted it was his. Fulton placed the glasses pouch on the top of the vehicle and contacted law enforcement.

3

¶7     Sergeant Kord Merical and Sergeant Barney Murnin arrived at Conley's home. Conley and Baker claimed all personal items in the vehicle and consented to a search, where additional needles and crystal-like substances were discovered. Sergeant Merical requested dispatch provide information on the registered owner of the vehicle; neither Conley nor Baker were identified as the registered owner. Conley and Baker were both arrested. Moore filed an affidavit in support of a petition to revoke Conley's sentence based on eight probation violations. Conley was charged with three new crimes: misdemeanor possession of drug paraphernalia, misdemeanor possession of marijuana, and felony possession of methamphetamine. Conley pleaded not guilty.

¶8     Conley's counsel filed a motion to suppress the evidence seized as a result of the vehicle search, arguing there was no inquiry to determine if Conley was the owner of or if he had control over the white vehicle. On December 7, 2015, the District Court denied the motion, finding that a probationer need not be a driver or owner of a vehicle in order to initiate a probationary search of the vehicle, so long as the probationer was a passenger immediately prior to the search. The State agreed to dismiss the marijuana possession charge and Conley pled guilty to the felony methamphetamine and misdemeanor paraphernalia charges. On January 11, 2016, the District Court revoked Conley's deferred sentence and sentenced Conley in accordance with the plea agreement. Conley appeals.

**STANDARD OF REVIEW**

¶9     We review a district court's denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied

4

correctly as a matter of law. *State v. Gill*, 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60. A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made. *City of Missoula v. Moore*, 2011 MT 61, ¶ 10, 360 Mont. 22, 251 P.3d 679 (citing *State v. Roberts*, 1999 MT 59, ¶ 11, 293 Mont. 476, 977 P.2d 974).

## DISCUSSION

¶10 *Did the District Court err in denying Conley's motion to suppress?*

¶11 Conley asserts that the search of the vehicle was illegal. The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect citizens against unreasonable searches, and seizures. Article II, Section 11 of the Montana Constitution reads:

> **Searches and seizures.** The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

¶12 The right to be free of unreasonable searches and seizures is augmented by Montana's constitutional right of privacy articulated in Article II, Section 10, which reads:

> **Right of privacy.** The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

5

¶13 When analyzing search and seizure questions that specially implicate the right of privacy, Sections 10 and 11 are read together. *State v. Boyer*, 2002 MT 33, ¶ 19, 308 Mont. 276, 42 P.3d 771. This conjunction leads us to examine the legality of a search or a seizure by determining whether there has been an unlawful governmental intrusion into one's privacy. *State v. Hill*, 2004 MT 184, ¶ 19, 322 Mont. 165, 94 P.3d 752.

¶14 Conley asserts the District Court erred when it concluded that the search was authorized by Condition 8 of his deferred sentence and Admin. R. M. 20.7.1101(7). Conley argues that the search was an illegal warrantless search because the vehicle searched was not Conley's and he did not have authority or control over the vehicle to justify a warrantless probation search. The State asserts the District Court properly concluded the search was authorized by the probation search condition in Conley's deferred sentence.

¶15 The District Court found the probation officers had the discretion to search the vehicle. They possessed sufficient articulable facts which gave rise to a reasonable suspicion that Conley had violated the conditions of his release, and as a passenger in the vehicle immediately prior to the search, Conley exerted sufficient control over the vehicle for the purpose of the probationary search.

¶16 To determine whether there has been an unlawful governmental intrusion into one's privacy in search and seizure situations, we look at the following factors: (1) whether the person had an actual expectation of privacy in the place searched; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the State's intrusion. *Hill*, ¶ 24. Where no reasonable expectation of

privacy exists, there is neither a "search" nor a "seizure" within the contemplation of Article II, Section 10 of the Montana Constitution. *Hill*, ¶ 24.

¶17    To be sure, a criminal conviction and a probationary sentence do not eviscerate all of the defendant's rights of privacy. Mont. Const. art. II, § X; *State v. Moody*, 2006 MT 305, ¶ 19, 334 Mont. 517, 148 P.3d 662. However, a probationer has a reduced privacy interest. *State v. Burke*, 235 Mont. 165, 169-71, 766 P.2d 254, 256-57 (1988); *see also State v. Fischer*, 2014 MT 112, ¶ 11, 347 Mont. 533, 323 P.3d 891; *State v. Brooks*, 2012 MT 263, ¶ 14, 367 Mont. 59, 289 P.3d 105; *State v. Burchett*, 277 Mont. 192, 195-96, 921 P.2d 854, 856 (1996). The reduced expectation does not automatically mean a probationer has no privacy expectations.

¶18    The basic purposes of probation and its corresponding conditions are to provide an offender the chance to rehabilitate outside of the prison setting and to provide the community protection from future criminal activity. *Moody*, ¶ 19; *Burke*, 235 Mont. at 169, 766 P.2d at 256. The judgment imposing a deferred sentence is a form of contract between the court and the probationer, eliminating certain privacy expectations; the probationer is aware that his activities will be scrutinized. *Burke*, 235 Mont. at 171, 766 P.2d at 257 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 875, 107 S. Ct. 3164, 3169 (1987)). A probation officer may search a probationer's person, vehicle, and residence and the probationer "must submit to such search," upon the probation officers "reasonable suspicion that the offender has violated the conditions of supervision." Admin. R. M. 20.7.1101(7). This Court has determined that a probation officer is granted

7

a "degree of flexibility" to determine how to exercise his or her supervisory powers. *Burke*, 235 Mont. at 169, 766 P.2d at 256.

¶19 Condition 8 of Conley's deferred sentence required him to submit to any search of his person, vehicle, and residence if his probation officer had reasonable grounds to believe Conley was violating the terms of his probation. The undisputed facts are that Conley violated his terms of probation[1] by failing to report to his probation officer for over two weeks, after admitting to and testing positive for methamphetamine use. Further, he failed to appear for a court-mandated drug rehabilitation program.

¶20 Clearly, Conley was aware of his status as a probationer and aware of his noncompliance with the conditions of his probation. Conley has not shown he had an actual expectation of privacy as a passenger in a vehicle neither Conley or Baker owned, nor has he demonstrated that society would consider such an expectation to be reasonable under these facts. Society recognizes, and in fact expects, that probationers will comply with the conditions of their probation. Society does not recognize a probationer's unimpeded right to privacy in his or her person, vehicle, or residence.

¶21 In cases not involving probationary searches, this Court has determined that where no reasonable expectation of privacy exists, there is neither a "search" nor a "seizure" within the contemplation of Article II, Section 10 of the Montana Constitution. *Hill*, ¶ 24 (citing *Boyer*, ¶ 20.) Further, where no expectation of privacy exists there can be no

---

[1] Two months prior to the search, Conley was convicted of two counts of criminal possession of methamphetamine and given a three-year deferred sentence that included probation.

8

unlawful government intrusion. *Hill*, ¶ 36. Conley has failed to show he had a reasonable expectation of privacy.

¶22 Conley also asserts that even if there was no reasonable expectation of privacy in his own vehicle, the language of his probation condition, that a "parole officer may search the . . . vehicle . . . of the Defendant," clearly excludes any vehicle that is not the defendant's vehicle, including items located in the back seat. Because the vehicle was not Conley's, the probation officer did not have the authority to search it. We disagree.

¶23 In *State v. McCarthy*, a defendant asserted he had an expectation of privacy in a vehicle where he was a passenger during an accident. 258 Mont. 51, 54, 852 P.2d 111, 113 (1993). This Court concluded that McCarthy had no reasonable expectation of privacy, noting that one relevant factor in our determination was that the defendant did not own the car. *McCarthy*, 258 Mont. at 55, 852 P.2d at 113.

¶24 *Hill* also involved the search of a vehicle not owned by the driver. *Hill*, ¶ 25. During a traffic stop, Hill told the officer that the vehicle was not his, but rather it had been rented from an agency by his friend. *Hill*, ¶ 7. He disclaimed any knowledge of any items in the trunk but declined to give permission to search. *Hill*, ¶ 9. The officers contacted the rental agency and learned that Hill was not an authorized driver and that the car was two days overdue. *Hill*, ¶ 9. They obtained permission to search from the rental agency. *Hill*, ¶ 9. Under these facts, this Court concluded Hill did not have a reasonable expectation of privacy regarding the vehicle or any items stored in the trunk. *Hill*, ¶ 36.

**CONCLUSION**

¶25    As a probationer, Conley has a reduced privacy interest.  Under these facts, Conley had no reasonable expectation of privacy in the vehicle or its contents.  Consequently, there was not a search.  There was not an unlawful governmental intrusion within the contemplation of the Montana Constitution.  The District Court correctly denied Conley's motion to suppress.

¶26    Affirmed.


                                                    /S/ MIKE McGRATH


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon, specially concurring.

¶27    I do not agree with the Court's conclusion that there was not a "search," because Conley had "no reasonable expectation of privacy."  Opinion, ¶ 25.  It appears the Court reasons that because a probationer has a "reduced privacy interest," a probationer has no expectation of privacy in his person, vehicle, or residence.  Opinion, ¶¶ 17, 20.  This clearly cannot be true since implicit in the requirement that there be reasonable suspicion to conduct a probationary search is the existence of a protectable privacy interest. Although Conley said the glasses pouch was his and it was located in a vehicle in which Conley exercised dominion and control, the Court mistakenly concludes Conley did not have an actual expectation of privacy.  Opinion, ¶ 20.  I disagree and believe that our

10

precedent supports a conclusion that Conley had a legitimate and reasonable expectation of privacy in the items secreted in the glasses pouch, which he claimed were his and over which he exercised dominion and control. Although I would recognize Conley had an expectation of privacy, I nonetheless believe the search was supported by reasonable suspicion and, therefore, valid.

¶28 To begin, the Court decided this case on an issue that was not briefed or raised by the parties on appeal. The District Court addressed whether the facts supported reasonable suspicion for the search, concluding that Conley had standing and thus a reasonable expectation of privacy to raise a Fourth Amendment claim. Neither party has asserted that Conley lacked an expectation of privacy in the car which would, in turn, preclude him from asserting a Fourth Amendment claim. In *State v. Bullock*, 272 Mont. 361, 372-73, 901 P.2d 61, 68-69 (1995), this Court expressly adopted an automatic-standing rule and supported its departure from precedent on the enhanced protections of Article II, Section 11. In *Bullock* we held that "when the charge against the defendant includes an allegation of a possessory interest in the property which is seized, the defendant has standing to object to the prosecutorial use of that evidence based on either the unlawful search of the location where it was found, or its unlawful seizure." *Bullock*, 272 Mont. at 373, 901 P.2d at 69. We reaffirmed our adoption of the automatic-standing rule in *State v. Parker*, 1998 MT 6, ¶¶ 2, 8, 19, 287 Mont. 151, 953 P.2d 692, concluding that Parker could challenge the legality of a search of a fanny pack found in the rear deck area of a vehicle in which he was a passenger. Parker denied ownership of the fanny pack and did not own or drive the searched vehicle. *Parker*, ¶¶ 2,

22. This Court determined that Parker could challenge the legality of the search because he was charged with possession of the items seized. *Parker*, ¶ 19.

¶29 However, in *Hill*, ¶¶ 11, 33, without considering the automatic-standing rule adopted in *Bullock* and followed in *Parker*, we held that Hill did not have a reasonable expectation of privacy in a rental car he illegally possessed, despite having been charged with a possessory offense. In *Hill*, the Court recited Article II, Section 10's right to privacy, but avoided addressing *Bullock* and *Parker*, where we analyzed standing within the context of Montana's constitutionally enhanced privacy protections. *Hill*, ¶ 19.

¶30 If we were to follow *Bullock* and *Parker* here, which have not been overruled, Conley is deemed to have a reasonable expectation of privacy which allows him to challenge the legality of the search. The Court, however, finds that Conley has no reasonable expectation of privacy; there was no search; and the actions of law enforcement may not be scrutinized because there was no unlawful intrusion. If we were to follow *Hill*, then we should examine whether the asserted expectation of privacy was reasonable and, if it was not reasonable, must conclude that the search was lawful. Apparently, the parties on appeal relied on our *Bullock/Parker* precedent because neither party asserts Conley lacked an expectation of privacy sufficient to challenge the lawfulness of the search. Even pursuant to *Hill*, however, our precedent supports a conclusion that Conley had a reasonable expectation of privacy in the glasses pouch. Conley admitted the glasses pouch was his; it was in the vehicle directly behind where Conley was seated; it was clearly accessible to Conley and within his dominion and control; and the contraband was secreted within it. The Court, like in *Hill*, ignores

12

*Bullock* and *Parker*. However, this time the Court concludes there is no reasonable expectation of privacy, not because the defendant was occupying an illegally possessed rental car, as Hill was, but because he is on probation. Opinion, ¶ 25. I disagree with the Court's conclusion and basis for finding that Conley did not have an expectation of privacy.

¶31 The Court mixes into the soup a person's status as a probationer. The Court concludes that because a probationer has a "reduced privacy interest," a probationer has no "expectation of privacy" in his person, vehicle, or residence, and that, consequently, there is no "search." Opinion, ¶¶ 17, 20, 25. A probationer has, as does any person, an expectation of privacy in his person, vehicle, or residence. This privacy interest is protected against unreasonable intrusion by the Fourth Amendment and Article II, Section 11 and may be intruded upon only when articulable facts supporting "cause" have been demonstrated. In the case of a probationer, the degree of certainty supporting cause is less than probable cause—a search may occur based upon reasonable suspicion. Thus, the requirement that law enforcement have reasonable suspicion prior to conducting a search relates not to whether a probationer has a protectable privacy interest in his person, vehicle, or residence—as he clearly does. Rather, reasonable suspicion refers to the degree of certainty which must be demonstrated prior to an intrusion into a probationer's protectable privacy interest. Because a probationer's privacy interest is reduced, the degree of certainty which officers must demonstrate prior to conducting a search is similarly reduced. *See Griffin*, 483 U.S. at 879, 107 S. Ct. at 3171; *Burke*, 235 Mont. at 169, 766 P.2d at 256. The requirement, therefore, that a search of a

13

probationer's person, vehicle, or residence be based upon reasonable suspicion does not equate to a probationer having no expectation of privacy, as the Court concludes. Rather, it counsels the standard or degree of certainty which must be demonstrated and that articulable facts exist to support the intrusion.

¶32 The search of a person, object, or place may be conducted pursuant to a valid search warrant or in accordance with a judicially recognized exception. Section 46-5-101, MCA. It is well recognized that a probationary search is one of those exceptions and may occur without probable cause as long as the officer has reasonable suspicion for the search. "We have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *State v. Boston*, 269 Mont. 300, 304, 889 P.2d 814, 816 (1994) (citations omitted). "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements." *Burke*, 235 Mont. at 168-69, 766 P.2d at 256 (quoting *Griffin*, 483 U.S. at 873-74, 107 S. Ct. at 3168). The probation officer must be able to act upon "a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Burke*, 235 Mont. at 169, 766 P.2d at 256 (quoting *Griffin*, 483 U.S. at 879, 107 S. Ct. at 3171). To this end, the probation officer must proceed "on the basis of [his] entire experience with the probationer, and to assess probabilities in the light of [his] knowledge of [the

14

probationer's] life, character, and circumstances." *Burke*, 235 Mont. at 169, 766 P.2d at 256 (quoting *Griffin*, 483 U.S. at 879, 107 S. Ct. at 3171).

¶33    "Restrictions on a probationer are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's conditional liberty status." *Burke*, 235 Mont. at 169, 766 P.2d at 256.  The probation officer is granted a "degree of flexibility" with "knowledge of the original offense, and with the probationer's welfare in mind." *Burke*, 235 Mont. at 169, 766 P.2d at 256.  Because of his expertise, "the probation officer [is] in a far superior position to determine the degree of supervision necessary in each case." *Burke*, 235 Mont. at 169, 766 P.2d at 256.  Given the nature of Conley's conviction, the probation officers' familiarity with Conley's history and issues surrounding his addiction, and the circumstances of the encounter, there were articulable facts supporting reasonable suspicion that the interior of the vehicle in which Conley recently exited contained evidence of his drug use.  We have consistently applied the foregoing authority and principles to uphold searches of an area that was within the control of the probationer. *See State v. Fritz*, 2006 MT 202, ¶ 11, 333 Mont. 215, 142 P.3d 806 (vehicle driven by, but not registered to, defendant); *Boston*, 269 Mont. at 305-06, 889 P.2d at 817 (storage garage).

¶34    Here, Conley admitted that he had been using methamphetamine for two to three years.  The District Court recognized the severity of Conley's addiction and, in addition to conditions of probation, referred Conley to Drug Treatment Court.  As is common with an untreated addiction to a dangerous substance such as methamphetamine, Conley tested

15

positive within one week of his release. Further, Conley failed to comply with daily reporting requirements for participation in Drug Treatment Court. On the two occasions he did report, June 11 and June 15, 2015, Conley admitted to using methamphetamine. Based on Conley's admittedly ongoing and untreated drug use, the District Court issued a warrant for Conley's arrest. Conley's probation officers thereafter sought to locate him, going to Conley's last known address. The probation officers observed Conley get out of the front passenger's side of a vehicle that was parked in front of the residence. Conley exited the vehicle immediately upon observing his probation officers' approach. Conley's appearance and behavior during his interaction with his probation officers was consistent with his ongoing use of methamphetamine: his clothing was dirty and disheveled, he smelled badly, and he admitted to having been up all night. The seized glasses pouch was within the immediate area in which Conley had just been observed. The officers noted the glasses pouch was within their plain view. Therefore, I would conclude, consistent with the District Court's reasoning, that the search was supported by the probation officers' reasonable suspicion that Conley was continuing to abuse methamphetamine and authorized by the conditions of Conley's deferred sentence.

¶35    The District Court articulated findings which it determined were consistent with Conley's ongoing and untreated drug use. As the District Court explained, "[w]hile there may not have been observations of intoxication at the scene, articulable facts supporting reasonable suspicion of ongoing drug violations arose from Mr. Conley's drug use history, Conley's drug use during the short period of supervision, June 11, 2015, and June 15, 2015, confirmed use of methamphetamine, and observed effects Mr. Conley's pattern

16

of drug use (failure to report to probation daily and other non-compliance)." The District Court concluded that "[t]hese observations, each prior to arriving at Conley['s] residence, are coupled with the on-scene observations suggesting ongoing drug use." The District Court's findings of fact are not clearly erroneous and were correctly applied as a matter of law.

¶36 I disagree with the Court that this was not a "search" and Conley did not have a reasonable expectation of privacy in the glasses pouch. The Court confuses the reduced degree of certainty which must be demonstrated for a lawful probationary search and whether there is a protectable privacy interest. Further, Conley's expectation of privacy was an issue neither party raised on appeal. I agree with the District Court that there was reasonable suspicion for the search and would affirm the District Court's denial of Conley's motion to suppress. I regret that district courts in the future will continue to struggle, as the District Court did here, with this Court's inconsistent interpretation of standing to challenge the legality of a search set out in *Bullock*, *Parker*, and *Hill*, and that we have misstated the law as it applies to probationary searches.

/S/ LAURIE McKINNON

Justice Beth Baker, specially concurring.

¶37 I join most of ¶¶ 31-35 of Justice McKinnon's Special Concurrence, because I believe it applies the correct analysis of the governing law to the facts of this case. I part company with Justice McKinnon, however, on two points.

17

¶38　First, I do not agree that *Hill*, *Bullock*, and *Parker* set forth inconsistent interpretations of standing to challenge the legality of a search. A defendant charged with a possessory offense in Montana has automatic standing to contest the search. *Bullock*, 272 Mont. at 372-73, 901 P.2d at 68-69. We did not apply a different rule in *Hill*. We did not hold that Hill lacked standing to challenge the search, but analyzed his claims and determined that there was no unlawful government intrusion into Hill's privacy.

¶39　Second, I do not take the Court's Opinion today to hold, as a matter of law, that a probationer has no expectation of privacy "in his person, vehicle, or residence." Opinion, ¶¶ 27, 31 (McKinnon, J., specially concurring). I understand the Court's conclusion to be that, under the facts of this case, Conley had no reasonable expectation of privacy in the vehicle that was searched. Like Justice McKinnon, I believe that the law does support Conley's expectation of privacy—at least in the glasses pouch—but also that the facts gave rise to reasonable suspicion to justify the search.

¶40　I join the Court in affirming the District Court's denial of Conley's motion to suppress.

/S/ BETH BAKER