FILED

09/01/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0201

DA 18-0201

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 222

STATE OF MONTANA,

Plaintiff and Appellee,

v.

STEPHEN THOMAS,

Defendant and Appellant.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 17-106-C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney, Bradley D. Bowen, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  August 12, 2020

Decided:  September 1, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Defendant and Appellant Stephen Thomas (Thomas) appeals from the Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress issued by the Eighteenth Judicial District Court, Gallatin County, on December 21, 2017, along with the accompanying Sentencing Order entered on February 16, 2018.

¶2     We restate the issue on appeal as follows:

*Whether the district court erred in denying Thomas's motion to suppress evidence found during a probation search of the room Thomas rented from a person on probation.*

¶3     We reverse and remand for dismissal of the criminal possession of a dangerous drug charge against Thomas.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     Thomas and his wife were homeless for nearly a year around 2016.  His wife was sick and dying.  While renting a room at a Super 8, Thomas learned of a potential place to rent from one of the hotel employees.  The employee's sister, Parischere Hughes (Paris) had a detached outbuilding in her backyard available to rent.  Thomas then met Paris, who he did not know before, and entered into a rental arrangement with her.  Thomas rented the outbuilding behind Paris's residence for $400 per month.  Paris owned the main trailer residence where she resided and the outbuilding rented by Thomas, but leased the underlying real property.  The outbuilding rented by Thomas was located some feet away from the main residence, inside a fence that surrounded the property.  The outbuilding lacked running water, plumbing, a bathroom, or kitchen facilities, but was wired for electricity and had a light switch.  It was large enough for a bed, desk, and end tables.

2

Thomas spent the majority of his time in the outbuilding but did use the toilet and shower, and occasionally the kitchen, in the main trailer residence. At times, when Paris was away, he cared for her dog and cat, which lived primarily in the main residence. Thomas and his wife kept all their belongings in the outbuilding. Paris did not reside in or access the outbuilding she rented to Thomas. Thomas generally kept the outbuilding locked—using a padlock when away and an interior door wedge when at home. Thomas and his wife resided in the outbuilding for several months in 2016, then moved out for a while, and then returned. Shortly thereafter, Thomas's wife died and he continued to reside in the outbuilding by himself.

¶5 Having previously been convicted, Paris was on misdemeanor probation and subject to probation searches. In particular, Paris's misdemeanor sentencing order included the following:

> The defendant's person, residence and vehicle shall be subject to warrantless searches at any time, day or night, by a misdemeanor probation officer, police officer, or other lawful authority acting under the direction of the probation officer, to assess compliance with the rules of probation. If the defendant resides with other persons, all places in the defendant's residence where the defendant has access are subject to search, even those private rooms of other persons with whom the defendant resides, unless those rooms are locked and the defendant does not have access to those rooms.

¶6 Prior to permitting Thomas and his wife to move into the outbuilding, Paris's probation officer Gen Stasiak did background checks on them. Thomas had a single previous felony conviction, which was nearly 20 years old. Finding nothing precluding them from living in the outbuilding, Stasiak approved the rental arrangement. When Paris did not report for drug/alcohol testing on December 16 and 19, 2016, Stasiak suspected Paris to be using drugs. On December 23, 2016, Stasiak, along with law enforcement

3

officers, went to Paris's residence to conduct a probation search. No one answered when they initially knocked on the trailer house door, but officers could hear dogs barking inside. When Stasiak and the officers arrived, Thomas was in his residence in the outbuilding. Upon hearing the dogs, he came outside to investigate. Upon doing so, he did not lock his residence. He encountered an officer inside the back fence who instructed Thomas to go in Paris's residence and open the front door. He complied.

¶7    Upon opening the front door as instructed, officers came inside the trailer and instructed Thomas as well as Everett Bolles—who was residing in Paris's residence and was apparently home—to sit on the couch. Again, Thomas complied. Officers searched the residence and found various items of contraband. Stasiak then determined as Thomas had not locked his residence it too was subject to search. Stasiak did not ask for Thomas's consent to search his residence and Thomas gave no consent to search his residence. In Thomas's residence, officers found a very old bottle of "Ipecac and opium powder" which Thomas testified was "sort of a family relic" from when his wife's family owned a pharmacy. *See* picture below. They also found marijuana and marijuana paraphernalia.



4

Approximately three months later, Thomas was charged with criminal possession of dangerous drugs, a felony, for the opium bottle.

¶8 Thomas filed a motion to suppress the evidence found in his residence, asserting the search exceeded the scope of any lawful probation search of Paris's residence. Following a hearing, the District Court denied Thomas's motion. The District Court found the search justified as there was reasonable suspicion for a probation search of Paris's residence; Paris and Thomas "were roommates that resided together in the same residence, albeit in separate areas, such that [Paris's] conditions of probation authorized a valid probationary search of [Thomas's] room"; and Thomas's room was unlocked and thus accessible to Paris. Thomas appeals.

## STANDARD OF REVIEW

¶9 We review the denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the district court's interpretation and application of the law is correct. *State v. Conley*, 2018 MT 83, ¶ 9, 391 Mont. 164, 415 P.3d 473. Findings of fact are clearly erroneous if not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if this Court's review leaves a definite or firm conviction a mistake has been made. *Conley*, ¶ 9.

## DISCUSSION

¶10 *Whether the District Court erred in denying Thomas's motion to suppress evidence found during a probation search of the outbuilding Thomas rented from a person on probation.*

¶11 Thomas asserts the District Court erred in denying his motion to suppress as the outbuilding he rented from Paris was his separate residence in which he had a reasonable

5

expectation of privacy that was entitled to "the full protections of the Fourth Amendment to the United States Constitution as well as the heightened privacy protections of the Montana Constitution." Thomas contends the District Court erred in allocating the burden of proving the illegality of the search to Thomas, the District Court misapplied *State v. Finley*, 2011 MT 218, 362 Mont. 35, 260 P.3d 175, and erred in determining that as he did not lock his residence to prevent Paris from potentially entering it, he forfeited his legitimate expectation of privacy.

¶12 The State contends that based on how the hearing was conducted and the District Court's findings and conclusions, the court appropriately placed the burden of establishing a legal justification for the warrantless search on the State.[1] Further, the State asserts the District Court articulated sufficient basis to support a reasonable suspicion Paris was in violation of her probation such that a probation search was permitted. The State argues Thomas's "room" was not a separate dwelling apart from Paris's residence and, particularly as there was no lock on the room's door, it was reasonable to conclude Paris had access to Thomas's room and it was thus subject to a probation search.

¶13 The Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution protect individuals from unreasonable searches and seizures by government officials. Article II, Section 10, of the Montana Constitution provides the "right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Individuals shall be secure

---

[1] We agree with the State in this regard, but given our discussion below we do not find it necessary to further discuss this issue.

6

in their "homes and effects from unreasonable searches and seizures." Mont. Const., art. II, § 11. We address Article II, §§ 10 and 11 in analyzing and resolving a search or seizure issue that specifically implicates the right to privacy. *State v Goetz*, 2008 MT 296, ¶ 14, 345 Mont. 421, 191 P.3d 489 (citations omitted). Further, in light of Article II, § 10's right to privacy, we have held the range of warrantless searches which may be conducted pursuant to Montana's Constitution is narrower than the corresponding range of searches which may be lawfully conducted under the Fourth Amendment to the U.S. Constitution. *Goetz*, ¶ 14 (citing *State v. Hardaway*, 2001 MT 252, ¶ 35, 307 Mont. 139, 36 P.3d 900).

¶14 Warrantless searches inside a home are per se unreasonable unless the State establishes an exception to the warrant requirement justified the search. *Finley*, ¶ 15.

> In analyzing the officer's entrance of the home, however, we restated the indelible rule that warrantless searches conducted inside a home are per se unreasonable, 'subject only to a few specifically established and well-delineated exceptions.' [*State v.*] *Hubbel*, 286 Mont. [200,] 212, 951 P.2d [971,] 978. This Court has routinely stated that the physical invasion of the home is the chief evil to which the 4th Amendment and Montana's Article II, § 11, are directed. We have emphasized again and again that the entrance to the home is where the federal and Montana constitutions draw a firm line, and that absent an exception, that threshold may not be crossed without a warrant. *See e.g., State v. Kao*[,] 215 Mont. 277, 282-83, 697 P.2d 903, 907 [(1985)] (quoting *Payton v. New York*[,] 445 U.S. 573, [590,] 100 S. Ct. 1371[, 1382 (1980)]); *State v. Bassett*, 1999 MT 109, ¶ 25, 294 Mont. 327[, 982 P.2d 410]. Further, it is well-settled that the government's intrusion into a home through an unlocked door is no different than if entry is gained with a key, or the use of force. *See, e.g., Sabbath v. United States*[,] 391 U.S. 585, 590, 88 S. Ct. 1755, 1758-59[ (1968)] . . . Thus, our analysis of the 'nature' of an officer's warrantless intrusion into a person's home cannot escape the necessity that the State prove that one of the exceptions provided under our search and seizure jurisprudence applies.

*State v. Therriault*, 2000 MT 286, ¶ 53, 302 Mont. 189, 14 P.3d 444. Finally, unlawful search and seizure invokes the exclusionary rule—which makes the evidence obtained

7

through an unlawful search and seizure inadmissible in criminal proceedings. *Therriault*, ¶ 57.

¶15 We turn first to consideration of Thomas's legitimate expectations of privacy in the outbuilding he rented from Paris—his primary residence. From our review of the record, the District Court misapprehended the evidence in concluding Paris and Thomas to be "roommates" and the outbuilding rented by Thomas to be part of Paris's residence. The undisputed evidence established an arms-length rental arrangement between Paris and Thomas providing Thomas exclusive control over the outbuilding as his primary residence. While Thomas may have had access to Paris's residence, she did not have similar access to his residence. While Thomas's residence did not contain some functions ordinarily associated with a separate and distinct dwelling, it was indeed used as Thomas's separate and distinct dwelling. Thus, the District Court's findings that Paris and Thomas were roommates and his "room" was part of Paris's residence are clearly erroneous and not supported by substantial evidence.[2]

¶16 Next, we consider whether Thomas's legitimate expectation of privacy in his residence was diminished by Paris's probation conditions, specifically the condition permitting warrantless searches at any time, day or night, of all places in her residence where she has access including private rooms of other persons with whom she resides, unless those rooms are locked and she does not have access to those rooms. Thomas does

---

[2] We do note, however, that even if Thomas were renting a room within Paris's residence, he would have a legitimate expectation of privacy with the right to be free from unreasonable search and seizure of his room. In such an instance, the State would have the burden of establishing the legality of the search—*i.e.*, an exception to the warrant requirement.

not contest the probation search of Paris's residence—only that the search exceeded the scope of the authorized probationary search. We agree with Thomas. Stasiak knew of and approved the arms-length rental relationship between Paris and Thomas and, as such, knew Thomas to have exclusive control over the outbuilding where he resided. The misdemeanor sentencing order and the terms and conditions of probation signed by Paris reduced Paris's rights of privacy in her person and residence, but did not govern Thomas. One does not lose his or her privacy rights in his or her residence merely because he or she rents the residence from a person on probation. Thomas was not on probation and not subject to probationary searches. Thomas's rights to privacy in his person and residence were not diminished by Paris's probationary status or the rules applicable to her probation.

¶17 Finally, we turn to consideration of whether Thomas's legitimate expectation of privacy in his residence was diminished by his failure to lock the residence when he left the residence to investigate the barking dogs. Thomas asserts the District Court misapplied *Finley* in this regard. We agree. When Stasiak went to Thomas's outbuilding, it was unlocked. She concluded that as it was unlocked, there was no indication Paris did not have access to the unlocked outbuilding and thus, it was subject to the probationary search. The District Court concluded *Finley* to be instructive on this point.

¶18 In *Finley*, Finley's wife was on probation. Finley shared a bedroom with his wife. In their bedroom was a safe. While Finley's wife was away from their residence, her probation officer—in response to a report she may have been involved in a theft and a drug deal—went to her home. Upon conducting an initial safety search in which she discovered marijuana plants in the bathroom adjacent to Finley and his wife's bedroom, the probation

9

officer conducted a more thorough probationary search which included a search of the safe in their bedroom which was open and unlocked. Contraband was found in the safe. Although Finley did not challenge the probationary search, he challenged that the search of the safe exceeded the scope of the authorized probationary search, arguing he alone possessed the safe's combination, he had opened the safe after his wife left the residence that morning, and he would have closed and locked it before her return. He asserted his wife did not have access to the safe and his private possessions would not be subject to a probationary search by his wife's probation officer. *Finley*, ¶¶ 5-11. We concluded nothing indicated Finley's wife did not have access to the unlocked and open safe such that the probation condition authorized the probation officer's warrantless search of Finley's residence, including the unlocked and open safe. The District Court concluded, like *Finley*, Stasiak "found the room open and unlocked, and she legally searched the room pursuant to the valid probationary search." *See Finley*, ¶ 12.

¶19    The District Court misapplied *Finley*, giving it an excessively broad interpretation. Were we to accept this interpretation, the exception to warrantless searches would nearly swallow the federal and state constitutional protections against such.[3] This case is completely distinguishable from *Finley*. Here, unlike *Finley*, Paris and Thomas are not married or even in a relationship with each other. Instead they entered into an arms-length rental arrangement providing Thomas exclusive control and possession over the

---

[3] Arguably any unlocked structure in a probationer's city of residence would be subject to warrantless search on the basis that the probationer potentially had access to it. Even if not taken to that extreme, any residence or location within the exclusive possession of anyone the probationer knows or visits would be subject to warrantless search on the basis that the probationer had access to it.

outbuilding which he used as his primary residence. Unlike *Finley*, where Finley's wife shared the living space and bedroom where the safe was located—the area searched—Thomas did not share his residence with Paris but instead Paris permitted Thomas to use her bathroom and kitchen facilities. Thomas did not have to lock his outbuilding residence to have a legitimate expectation of privacy in it.[4]

## CONCLUSION

¶20    Here, Thomas had a legitimate expectation of privacy in his residence. The District Court erred in denying Thomas's motion to suppress evidence found during the probation search of the outbuilding Thomas rented from Paris. Thus, it is appropriate to reverse Thomas's conviction for criminal possession of dangerous drugs and remand this case to the District Court to dismiss with prejudice the criminal possession of dangerous drug charge against Thomas.

¶21    Reversed and remanded.


                                        /S/ INGRID GUSTAFSON


We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON

---

[4] It is noted that Thomas did, however, routinely lock his residence when he was away. It was completely understandable and did not reasonably provide Paris access to his residence when he went outside the residence to investigate the dogs barking and was then immediately instructed by law enforcement to go open Paris's residence to the officers at her front door.