FILED

12/23/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0229

DA 24-0229

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 298N

STATE OF MONTANA,

      Appellee and Plaintiff,

  v.

RUSTY DALE O'CONNELL,

      Appellant and Defendant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 22-31
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Britt Cotter, Cotter Law Office, P.C., Polson, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

      William Fulbright, Ravalli County Attorney, David J. Lakin, Deputy
County Attorney, Hamilton, Montana

Submitted on Briefs:  October 22, 2025

Decided:  December 23, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, Rusty Dale O'Connell (O'Connell), appeals from the Amended Judgment and Commitment issued February 7, 2024, by the Twenty-First Judicial District Court, Ravalli County, Montana. We affirm.

¶3 O'Connell was charged with theft and criminal possession of dangerous drugs (CPDD), both felonies. He entered an *Alford* plea[1] to the theft charge for knowingly possessing silver stolen from Gene Huckstadt's storage unit, which was burglarized on September 18, 2020, and pled guilty to the CPDD charge. O'Connell was sentenced to a net sentence of 15 years to the Department of Corrections, with 10 years suspended. As part of his sentence, he was ordered to pay, jointly and severally with co-defendants, $120,000 in restitution for the total estimated value of the silver stolen from the storage

---

[1] Section 46-12-212(2), MCA, provides a procedure, arising from *N.C. v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), colloquially referred to as an *Alford* plea, which allows a defendant to enter a guilty plea without admitting that he committed the offense if a factual basis exists, the defendant has reviewed the evidence against him, the defendant is capable of making a voluntary, knowing and intelligent choice, and the defendant believes the plea is in his best interest. *Lawrence v. Guyer*, 2019 MT 74, ¶ 8, 395 Mont. 222, 440 P.3d 1.

unit.[2] O'Connell appeals the restitution portion of the judgment, asserting he was not criminally accountable for the theft from the storage unit or the entire $120,000 in stolen silver and the restitution order was not supported by substantial evidence.

¶4 The parties agree as to the applicable standards of review. Restitution presents a mixed question of law and fact, which are reviewed de novo. *State v. Dodge*, 2017 MT 318, ¶ 6, 390 Mont. 69, 408 P.3d 510. This Court reviews a district court's findings regarding the amount of restitution to determine whether they are clearly erroneous. *State v. Cleveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 432 P.3d 1074; *State v. Patterson*, 2016 MT 289, ¶ 9, 385 Mont. 334, 384 P.3d 92. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if review of the record leaves the Court with the firm conviction that a mistake has been made. *Cleveland*, ¶ 7; *State v. Pierre*, 2020 MT 160, ¶ 10, 400 Mont. 283, 466 P.3d 494; *State v. Conley*, 2018 MT 83, ¶ 9, 391 Mont. 164, 415 P.3d 473.

¶5 On September 18, 2020, co-defendants McCready and Edens entered Huckstadt's storage unit and stole his silver. After McCready was arrested, at McCready's direction, O'Connell took possession of the silver McCready had taken to his home. O'Connell admits he then possessed a portion of the stolen silver but asserts there is insufficient evidence to support a finding that he possessed or controlled $120,000 worth of the stolen silver.

---

[2] O'Connell notes in his opening brief that this amount was reduced or offset once some of the recovered silver was released from evidence. Review of the Amended Judgment and Commitment referenced by O'Connell indicates the restitution amount to have been reduced by this offset to $81,574.10.

3

¶6     From our review of the record, there is sufficient evidence that he possessed or controlled at least $120,000 of the stolen silver. In his opening brief, O'Connell concedes he "was found in possession of a suitcase containing 50 to 200 pounds of silver and several paint cans of coins." At the sentencing hearing, various witnesses testified, giving conflicting evidence as to the weight and value of the stolen silver. No objection was made to any of their testimony. Rosie Huckstadt, wife of the now deceased victim, testified that based on records kept by her husband she believed the value of the silver stolen was $120,000. Jesse Edens, a co-defendant, testified that he and McCready stole three safes "that were two and a half feet by two and a half feet squared that were full, and there was maybe a dozen bags of like quarters, dimes, silver in the footlocker that we took also." He described it as a truckload of silver. After taking the silver, they purchased empty paint cans from the hardware store and filled 12 to 15 cans with the silver. When asked whether he believed the cans of silver weighed approximately 60 pounds each, Edens agreed that would be a reasonable assumption and stated that there had been more than 12 of these cans. However, when now retired Detective Burlingham testified, he stated that he had weighed the one can that had been recovered from co-defendant Edens's residence at around 35 pounds. At sentencing, O'Connell testified as to the sale price of silver being approximately $28/ounce, explaining he was a silver collector and had been so since his youth.[3] During his testimony he also admitted to possessing at least seven of the paint cans

---

[3] The Affidavit in support of the Amended Information, which was relied upon by the State in outlining its proof to support O'Connell's *Alford* plea, and which was not objected to by O'Connell, notes the spot price of silver at the time to be $20.69/ounce.

full of silver, but estimated they weighed "anywhere from maybe 15 pounds, 20 pounds." Additionally, he admitted to possessing a suitcase full of silver which he estimated weighed 50 pounds or more. At the sentencing hearing, the State also admitted audio of a recorded telephone conversation between McCready and his mother, which took place while McCready was in custody at the Ravalli County Detention Center and O'Connell was present with McCready's mother at McCready's home. Notably, McCready indicated during the call that the suitcase full of silver—which O'Connell admits possession of—weighed 150-200 pounds.

¶7     It is the function of the district court to weigh the testimony and determine witness credibility. *In re Kesler*, 2018 MT 231, ¶ 17, 392 Mont. 540, 427 P.3d 77. When, as here, the record contains conflicting evidence, it is the district court's job to resolve the conflicts. *Kesler*, ¶ 21. "The clear error standard 'is a deferential one,' requiring a trial court's findings to be affirmed when its 'account of the evidence is plausible in light of the record viewed in its entirety.'" *Kesler*, ¶ 23 (quoting *Amadeo v. Zant*, 486 U.S. 214, 223, 108 S. Ct. 1771, 1777 (1988)). Viewed in its entirety—accepting the testimony and statements of co-defendants and O'Connell's admission of possessing at least seven paint cans and the suitcase full of silver—the District Court could have determined O'Connell possessed well more silver than the court determined he possessed. Based on the evidence presented at sentencing, the District Court's findings of fact were not clearly erroneous, the District Court did not misapprehend the effect of the evidence, and review of the record does not leave this Court with the firm conviction that a mistake was made.

¶8    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶9    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE